ARTHUR DEVLIN & others *vs.* COMMISSIONER OF CORRECTION
& others.[1]

Suffolk.    November 8, 1973, — December 20, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY,
KAPLAN, & WILKINS, JJ.

*Imprisonment. Penal Institution. Statute,* Construction. *Words,* "Committed offender."

An administrative practice of the department of correction over a period
of ten months after the enactment of St. 1972, c. 777, § 18, revising
G. L. c. 127, § 90A, of granting furloughs under clause (f) to prisoners
serving life sentences for first degree murder was entitled to some weight
in interpreting clause (f). [438-439]

Prisoners serving sentences of life imprisonment for first degree murder
are eligible under clause (f) of G. L. c. 127, § 90A, as appearing in
St. 1972, c. 777, § 18, for furloughs in the discretion of the appropriate
correctional officials, even though such prisoners cannot be paroled
until their sentences are commuted by the Governor and council.
[439-443]

BILL IN EQUITY filed in the Supreme Judicial Court for the
county of Suffolk on October 10, 1973.

The case was reserved and reported without decision by
*Reardon,* J.

*Max D. Stern (Matthew Feinberg & Richard Shapiro* with
him) for the plaintiffs.

*Terence P. O'Malley,* Assistant Attorney General (*Walter
H. Mayo, III,* Assistant Attorney General, with him) for the
defendants.

WILKINS, J. The plaintiffs challenge the determination by
the defendants that an inmate who is serving a sentence of
life imprisonment imposed after his conviction of murder in
the first degree is not permitted under any circumstances to

[1]The other defendants are the deputy commissioner of correction and the
superintendent or acting superintendent of the Massachusetts correctional institutions at Norfolk, Walpole, and Framingham. Each of the plaintiffs is incarcerated
in one of these correctional institutions.

temporary release under clause (f) of G. L. c. 127, § 90A, as appearing in St. 1972, c. 777, § 18.

The case comes to us on a reservation and report without decision from a justice of this court on a bill in equity for declaratory and injunctive relief and a statement of agreed facts.[2]

Section 90A of G. L. c. 127, which appears in its entirety in the margin,[3] sets forth those circumstances under which a

---

[2]In September, 1973, the various defendant superintendents stopped accepting furlough applications under clause (f) from persons serving life sentences for murder in the first degree, including applications from the plaintiffs. The department of correction concluded that, until changed by judicial determination or by legislation, it must follow the interpretation of clause (f) which was given by the Attorney General in an opinion to the House of Representatives on June 21, 1973. In that opinion the Attorney General concluded that persons serving life sentences for murder in the first degree are not entitled to furloughs under clause (f) of § 90A. Rep. A. G., Pub. Doc. No. 12 (1973), p. 150 (*Opinions of the Attorney General, No. 47* [June 21, 1973]).

There is no question here concerning the furlough rights under clause (f) of those committed offenders who were convicted of murder in the second degree and punished by imprisonment for life. Each prisoner serving a sentence for life in a correctional institution in the Commonwealth, except one at the institution in Bridgewater or one "serving a life sentence for murder in the first degree," is eligible for parole after serving fifteen years of that life sentence. G. L. c. 127, § 133A.

[3]"The commissioner may extend the limits of the place of confinement of a committed offender at any state correctional facility by authorizing such committed offender under prescribed conditions to be away from such correctional facility but within the commonwealth for a specified period of time, not to exceed fourteen days during any twelve month period nor more than seven days at any one time; provided that no committed offender who is serving a life sentence or a sentence in a state correctional facility for violation of section 13, 13B, 14, 15, 15A, 15B, 16, 17, 18, 18A, 19, 20, 21, 22, 22A, 23, 24, 24B, 25, or 26 of chapter 265, or section 17, 34, 35 or 35A, of Chapter 272, or for an attempt to commit any crime referred to in said sections shall be eligible for temporary release under the provisions of this section except on the recommendation of the superintendent on behalf of a particular committed offender and upon the approval of the commissioner. The administrator of a county correctional facility may grant like authorization to a committed offender in such facility. Such authorization may be granted for any of the following purposes: (a) to attend the funeral of a relative; (b) to visit a critically ill relative; (c) to obtain medical, psychiatric, psychological or other social services when adequate services are not available at the facility and cannot be obtained by temporary placement in a hospital under sections one hundred and seventeen, one hundred and seventeen A, and one hundred and eighteen; (d) to contact prospective employers; (e) to secure a suitable residence for use upon release on parole or discharge; (f) for any other reason consistent with the reintegration of a committed offender into the community. For the purposes of this section the word 'relative' shall mean the committed offender's father, mother, child, brother, sister, husband or wife and, if his grandparent, uncle, aunt or foster parent acted as his parent in rearing such committed offender, it shall also mean such grandparent, uncle, aunt or foster parent.

"A person away from a correctional facility pursuant to this section may be accompanied by an employee of the department in the discretion of the commis-

committed offender at any State correctional facility may be permitted to be away from that correctional facility for a specified period or periods of time. Of the purposes for which such a furlough may be granted under § 90A the only one directly involved here is that set forth in clause (f), authorizing a furlough "for any other reason consistent with the reintegration of a committed offender into the community." Each plaintiff is serving a sentence of life imprisonment imposed after conviction of murder in the first degree under G. L. c. 265, § 1. He, therefore, is not entitled to parole unless and until his sentence is commuted by the Governor and Council. G. L. c. 265, § 2.[4]

The defendants argue that because a person serving a life sentence for murder in the first degree is not entitled to re-entry into the community on parole, there is no authority to grant a clause (f) furlough to prisoners such as the plaintiffs. They say that clause (f) is concerned with furloughs for reasons consistent with reintegration of a committed offender into the community and that, therefore, the Legislature did not intend to authorize furloughs under clause (f) to "first degree lifers." The plaintiffs argue in response that, as often happens, the sentence of a person serving a life term for murder in the first degree may be commuted, and, if that occurs, he or she is then eligible for parole. The plaintiffs further argue that § 90A contains no explicit restriction on clause (f) furloughs for prisoners serving life sentences for murder in the first degree, and none should be implied.

---

. sioner, or an officer of a county correctional facility, in the discretion of the administrator.

"Any expenses incurred under the provisions of this section may be paid by the correctional facility in which the committed offender is committed. A committed offender shall, during his absence from a correctional facility under this section, be considered as in the custody of the correctional facility and the time of such absence shall be considered as part of the term of sentence."

[4]Information incorporated in the statement of agreed facts covering the period from November 6, 1972, to March 25, 1973, indicates that the 104 persons serving terms for murder in the first degree represented 5.3% of the residents in the Massachusetts State correctional system (excluding mental patients and alcoholics at Bridgewater). Thirty-eight "first degree lifers" received approximately 2.4% of the 2,966 furloughs granted during that period. It does not appear how many, if any of these 104 persons listed as having committed murder in the first degree have had their sentences commuted.

The sole question for decision is whether § 90A authorizes a clause (f) furlough for a "first degree lifer." Under § 90A the commissioner is authorized to "extend the limits of the place of confinement of a committed offender at any state correctional facility by authorizing such committed offender under prescribed conditions to be away from such correctional facility" for certain limited periods of time. Section 90A continues by stating that "no committed offender who is serving a life sentence," or a sentence for certain listed offences, shall be eligible for temporary release "except on the recommendation of the superintendent on behalf of a particular committed offender and upon the approval of the commissioner."

Section 90A then continues by listing six purposes for which authorization for temporary releases may be permitted. Clause (a) concerns attendance at a funeral of a relative; clause (b) relates to a visit to a critically ill relative; and clause (c) involves obtaining needed medical or social services available neither at the correctional facility nor through existing statutory provisions for hospitalization. Clause (d) involves a furlough "to contact prospective employers"; clause (e) is concerned with a furlough "to secure a suitable residence for use upon release on parole or discharge." The parties agree that furloughs may be granted to persons serving life sentences for murder in the first degree for the purposes stated in clauses (a), (b), and (c) but not for the purposes stated in clauses (d) and (e). We come then to the language of clause (f) which authorizes temporary release "for any other reason consistent with the reintegration of a committed offender into the community."

The plaintiffs assert that the administrative practice of the department to grant furloughs to "first degree lifers" should be given weight in resolving any ambiguity in the intended scope of clause (f). The then commissioner of correction and members of his staff participated in the drafting of St. 1972, c. 777, and particularly in the amendment of G. L. c. 127, § 90A. From the initiation of the furlough program on November 6, 1972, until it was suspended for "first

degree lifers" on September 12, 1973, 184 furloughs were granted to forty-nine "first degree lifers."[5] These furloughs were granted under policies and procedures of the department when the superintendent of the respective institution and the commissioner of correction determined in their discretion that the particular inmate qualified under the relevant criteria and deserved to be granted a furlough.

The plaintiffs argue that these circumstances justify application of the principle that in resolving an ambiguity in a statute, weight may be given to consistent administrative application of that statute, especially if the interpretation is contemporaneous with its enactment and is long continued. *Cleary* v. *Cardullo's, Inc.* 347 Mass. 337, 343 (1964). *Assessors of Holyoke* v. *State Tax Commn.* 355 Mass. 223, 243-244 (1969). Here the department of correction, which actively participated in the enactment of § 90A in its present form, made an interpretation contemporaneous with the enactment of § 90A that clause (f) permits the temporary release of persons serving life sentences for murder in the first degree, and that department has, as far as appears, consistently maintained that position. The department's interpretation of clause (f), however, although applied in numerous instances in the months following the effectiveness of the amendment to § 90A, is not one of long standing. In spite of this limiting circumstance, we believe that the department's construction of § 90A, a statute whose administration is in its charge, is entitled to some weight in resolving any ambiguity in the scope of clause (f). See *School Comm. of Springfield* v. *Board of Educ.* 362 Mass. 417, 441 n. 22 (1972).

We hold that clause (f) of § 90A authorizes the granting of a furlough to a person who is serving a life sentence for murder in the first degree. Clause (f) contains no express lim-

---

[5] Only one such person "escaped." We do not know from the statement of agreed facts how many of these 184 furloughs were granted prior to that "escape." That "escape" provoked the controversy which led to the order of the House of Representatives requesting the opinion of the Attorney General and ultimately to the filing of this suit. We do know that seventy-one of these furloughs were granted prior to March 25, 1973.

itation as to the committed offenders who may be granted temporary release for the purpose there stated. "[U]nless the context otherwise *requires*" (emphasis supplied), committed offender means any "person convicted of a crime and committed, under sentence, to a correctional facility." G. L. c. 125, § 1, as appearing in St. 1972, c. 777, § 8.[6] The words "committed offender" in the context of clause (f) are not required to have a more limited meaning. In fact, the context may suggest that all persons serving life sentences, including persons serving such terms for murder in the first degree, are included in the words "committed offender" in clause (f). In an earlier portion of § 90A the Legislature adverted to persons serving life sentences, set forth a special requirement of recommendation and approval of their temporary release, and did nothing further to limit the rights of persons serving life sentences.[7]

Looked at simply in terms of the words of clause (f), the temporary release of a person serving a life sentence for murder in the first degree could be found by the appropriate superintendent and the commissioner of correction to be "consistent with the reintegration of . . . [the] offender into the community." A clause (f) furlough is permitted for *any reason consistent* with such reintegration. There is no requirement in clause (f) that integration into the community be imminent or certain. In short, clause (f) seems clearly

---

[6]We think it is of some significance in interpreting § 90A that the definition of "committed offender" was added to the General Laws in the same act that adopted § 90A in its present form.

[7]The failure of the Legislature to make a specific exception in clause (f) for persons serving life sentences for murder in the first degree, where it has done so in other statutes, suggests an intention not to exclude "first degree lifers" from the benefits of clause (f). See *Commissioner of the Dept. of Community Affairs* v. *Boston Redevelopment Authy.* 362 Mass. 602, 613-614 (1972). For a statute expressly excluding persons serving life terms for first degree murder from the benefits of legislation, see G. L. c. 127, § 83B, as amended by St. 1972, c. 172, § 2, excluding any "prisoner serving a life sentence for first degree murder" from those male prisoners who may be given the opportunity to work on reforestation, maintenance and development of certain State forests; and G. L. c. 127, § 83A, as amended by St. 1972, c. 172, § 1, to the same effect. This legislation making explicit reference to those serving a sentence for life for murder in the first degree in G. L. c. 127 was enacted during the same session of the same Legislature which enacted § 90A of G. L. c. 127 in its present form. See also G. L. c. 127, § 133A, as appearing in St. 1965, c. 766, § 1, for a statute expressly carving out an exception for "first degree lifers."

Devlin *v.* Commissioner of Correction.

designed to authorize the penal authorities, as experts in the field, to grant furloughs to any committed offender, on a case by case basis and subject to limitations and safeguards, whenever those authorities conclude that such a furlough is deserved and will be consistent with reintegration of the offender into society.[8]

The defendants urge that the context of clause (f) requires a construction which denies authorization for a clause (f) furlough for any person serving a life term for murder in the first degree. They correctly point out that such a prisoner cannot be paroled until his or her sentence is commuted and that commutation may never occur. However, we know that life sentences for murder in the first degree are from time to time commuted. One plaintiff has had his petition for commutation of sentence approved by the advisory board of pardons and by the Governor and is awaiting action on his petition by the Governor's Council. Other plaintiffs have filed petitions for commutation of sentence which have not been acted on. The fact that a committed offender who is serving a life sentence for murder in the first degree has an additional legal barrier to clear before he may be paroled may have a bearing on the reasonableness of the granting of a particular furlough. However, because that barrier is not insurmountable,[9] we see no justification for concluding that

---

[8]Although not set forth in the statement of agreed facts, the bill alleges circumstances for which one or more of plaintiffs have apparently obtained furloughs. These include: participation in a national symposium on education at the University of Massachusetts; testimony before a committee of the General Court; participation in radio and television programs, such as panel discussions and talk shows; receipt of an award presented by the Massachusetts Council on Crime and Correction; making speeches at schools, colleges and elsewhere; and collecting information and making arrangements in connection with the offender's commutation petition. Clearly activities such as these (and no doubt others) are consistent with the offender's reintegration into the community, even if that reintegration may occur only after commutation of the offender's sentence and a subsequent determination of the parole board.

[9]A 1973 letter of the superintendent of one State correctional institution to the acting commissioner of correction is incorporated in the statement of agreed facts. In that letter he wrote: "[I]t is a historical tradition that we do not allow men to die of old age in prison. As you know most men ['first degree lifers'] are eventually released and first degree lifers go through the commutation process to gain their release."

A June, 1971, special report issued by the Massachusetts Department of Correction, entitled "Some Notes on Death Row and the Death Penalty in Massachu-

Devlin *v.* Commissioner of Correction.

the temporary release of a "first degree lifer" can never be "consistent with . . . [his] reintegration into the community." In fact a furlough may produce information, not otherwise obtainable, about the capacity of such an offender to become a law abiding, effective member of the community.

The defendants further argue that because of the particular circumstances in which it was rendered, weight should be given to the opinion on the scope of clause (f) which the Attorney General submitted to the House of Representatives on June 21, 1973. On May 29, 1973, the House adopted an order requesting from the Attorney General an opinion whether under clause (f) a furlough was properly given to a "first degree lifer" who did not return pursuant to the terms of his furlough. The order recited the pendency of bills proposing changes in § 90A, one of which would exclude from the benefits of § 90A a person convicted of murder in the first degree. See 1973 House Bill No. 6788. See also 1973 House Bill No. 6369, § 2, which would deny furloughs to all persons serving life sentences (and to certain other offenders). The Attorney General concluded in his opinion that "a temporary release of a committed offender serving a life sentence and not eligible for parole . . . is not authorized by clause (f)." No action amending § 90A has since been taken.[10] The defendants argue that the failure of the

---

setts" dealing with cases of "individuals who have been sentenced to die in the electric chair from the date of its installation in 1898 through May 15, 1971" comments on the parole chances of a "first degree lifer." It states: "Once a man's death sentence has been commuted, he has a good chance of ultimately being paroled. The closest approximation of this probability of parole, based on figures projected from the earlier part of the century, is approximately three-quarters." Of the thirty-seven individuals whose death sentences were commuted between 1898 and May 15, 1971, seventeen had been paroled, fifteen were still incarcerated and five had died in prison, as of May 15, 1971. Table I, Some Notes on Death Row and the Death Penalty in Massachusetts, Massachusetts Department of Correction, June, 1971. These figures do not include the paroles, if any, granted to "first degree lifers" as to whom the jury recommended that "the sentence of death be not imposed" (G. L. c. 265, § 2, as amended through St. 1956, c. 731, § 12) and who may have had their sentences commuted. In 1951, G. L. c. 265, § 2, was amended to eliminate the requirement that the death sentence be imposed on a person convicted of murder in the first degree, if the jury recommended that the sentence of death be not imposed. St. 1951, c. 203.

[10] 1973 House Bill Nos. 6369 and 6788, and other proposed legislation concerning the correctional system, have been referred to a special study commission. Res. 1973, c. 90.

Devlin *v*. Commissioner of Correction.

Legislature in 1973 to amend clause (f) to authorize furloughs for "first degree lifers" should be interpreted as an indorsement by the Legislature of the Attorney General's interpretation of the intention of the Legislature in adopting clause (f) in 1972. Legislative nonaction in 1973 with respect to clause (f), however, does not furnish a reliable guide to the intention of the Legislature in enacting clause (f) in 1972. See *Helvering* v. *Hallock,* 309 U. S. 106, 119-121 (1940); *Wong Yang Sung* v. *McGrath,* 339 U. S. 33, 47-48 (1950). In any event the legislative circumstances in 1973 fail to disclose a clear indication of the intention of the Legislature during its 1973 session concerning clause (f), even if it were material to the intention of the next prior Legislature. The failure to enact clarifying legislation in the face of a continuing controversy over the scope of clause (f) is at best ambiguous.

A decree shall be entered declaring that persons serving sentences of life imprisonment imposed after conviction of first degree murder under G. L. c. 265, § 1, are eligible for temporary release under clause (f) of G. L. c. 127, § 90A, as appearing in St. 1972, c. 777, § 18, in the discretion of the appropriate correctional officials.[11] We stress, however, the fact that a "first degree lifer," and certain other inmates, may be granted a clause (f) furlough only on recommendation of the appropriate superintendent and on approval of the commissioner, whose approval we take to be nondelegable. In seeking an exercise of that administrative discretion in his or her favor, a "first degree lifer," among all committed offenders, has the heaviest burden to meet.

*So ordered.*

---

[11]In the circumstances there is no occasion for the entry of an injunction against any of the defendants, who we assume will now accept and consider applications for furloughs from the plaintiffs and other "first degree lifers."