## CITY OF CAMBRIDGE *vs*. CAMBRIDGE POLICE PATROL OFFICERS ASSOCIATION.

No. 02-P-32.

Middlesex. April 9, 2003. - July 9, 2003.

Present: MASON, KANTROWITZ, & DOERFER, JJ.

*Statute,* Construction. *Public Employment,* Police, Collective bargaining. *Police,* Collective bargaining, Compensation. *Words,* "Hazardous duty stipend," "Regular wages."

A Superior Court judge erred in concluding that a hazardous duty stipend, to which Cambridge police officers were entitled as the result of arbitration, was also payable to police cadets as "regular wages" within the meaning of G. L. c. 41, § 96B, while they were attending an initial course of training at the police academy before being granted police powers. [524-526]

CIVIL ACTION commenced in the Superior Court Department on July 10, 1998.

The case was heard by *Wendie I. Gershengorn,* J., on motions for summary judgment.

*Tim D. Norris* for the plaintiff.

*James F. Lamond* for the defendant.

DOERFER, J. Cambridge police officers are entitled as the result of arbitration to a "Hazardous Duty Stipend." In a declaratory judgment action a Superior Court judge held that this stipend is also payable to police cadets as "regular wages" (as that term is used in G. L. c. 41, § 96B) while they are attending an initial course of training at the police academy before being granted police powers. We conclude otherwise and direct the entry of a new declaratory judgment.

*Facts.* The matter was decided on summary judgment. The facts are not in dispute. In 1997, an arbitrator awarded, as the result of "interest arbitration," an annual "Hazardous Duty Stipend," payable monthly to the officers of the Cambridge

police department.[1] The arbitrator issued a lengthy written decision in which he explained the nature of this stipend and his reasons for awarding it. In brief, the arbitrator perceived his task as responding to an issue raised by the Cambridge police, namely that there be parity between their contract and that of the Cambridge firefighters which included a hazardous pay stipend. The police argued successfully before the arbitrator that they should receive roughly equal recurring cash benefits as do firefighters and referred to the firefighter's hazardous duty stipend as a recurring cash benefit.

It is clear from the arbitrator's written decision that the parties and the arbitrator viewed the hazardous pay stipend as a recurring non-wage fringe increase not to be included in the base wages upon which percentage increases would be figured in the course of future collective bargaining.[2]

Newly recruited police officers must attend a course of training before they are entitled to exercise the powers of sworn police officers. G. L. c. 41, § 96B. Although not all sworn police officers perform hazardous duties all of the time, every such officer is subject to being assigned to hazardous duty despite his or her regular duties. As such, all sworn Cambridge police officers, regardless whether they are actually assigned to hazardous duty, are entitled under the arbitrator's award to the hazardous pay stipend unless they are out injured or sick. Police cadets, however, are not subject to assignment to hazardous duty.

General Laws c. 41, § 96B, provides in material part:

> "Every person who receives an appointment to a position on a full-time basis in which he will exercise police powers in the police department of any city or town, shall, prior to exercising police powers, be assigned to and

---

[1]Interest arbitration was initiated pursuant to St. 1987, c. 389, as amended, by filing memoranda with the joint labor management committee for municipal police and fire in which the parties agreed to submit issues remaining open in their negotiations to final and binding interest arbitration. The arbitrator's award became part of the terms of the collective bargaining agreement for the periods in question.

[2]Cambridge police officers are the beneficiaries of other remunerative aspects of their collective bargaining agreement with the city, such as holiday pay, Monday-to-Friday differential, weapons training pay, and holiday premium pay, none of which are paid to cadets.

satisfactorily complete a prescribed course of study approved by the department of criminal justice training. The provisions of chapter thirty-one [dealing with civil service] and any collective bargaining agreement notwithstanding, any person so attending such a school shall be deemed to be a student officer and shall be exempted from the provisions of chapter thirty-one and any collective bargaining agreement for that period during which he is assigned to a municipal police training school, provided that such person shall be paid the regular wages provided for the position to which he was appointed and such reasonable expenses as may be determined by the appointing authority and be subject to the provisions of chapter one hundred and fifty-two [worker's compensation]."

The question presented in this case is whether the hazardous duty stipend is part of the "regular wages" of a police cadet within the meaning of § 96B. The term "regular wages" is not further defined in the statute.

We rely on well established canons of statutory construction. See *Commonwealth* v. *Smith*, 431 Mass. 417, 421 (2000). "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981), quoting from *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975). Furthermore, "[t]he statutory language itself is the principal source of insight into the legislative purpose." *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, supra at 585, citing *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977).

On its face, G. L. c. 41, § 96B, appears to exclude cadets from receiving certain benefits of a collective bargaining agreement other than the right to receive regular wages and reasonable expenses. The statute seeks to distinguish forms of compensation in a collective bargaining agreement that are "regular wages" from those that are not. Base salary paid at

regular intervals is a form of compensation that fits the category of regular wages. But to include as "regular wages" all forms of compensation from a collective bargaining agreement defeats the statute's purpose of distinguishing various forms of compensation while assuring cadets the right to receive regular wages.

We also must take into account the meaning of the phrase "Hazardous Duty Stipend" as that term was used by the arbitrator in order to determine whether it is covered by the term "regular wages" in the statute. The arbitrator's decision makes clear that the stipend he awarded was to be distinguished from the concept of wages.

Citing *Jancey* v. *School Comm. of Everett*, 421 Mass. 482, 490-491 (1995) (*Jancey*), as support, the plaintiffs argue that the word "wages" has a judicially defined meaning that in the broadest sense includes all forms of compensation (e.g., salaries, commissions, bonuses, stipends and so forth). *Jancey* recognized that where a "statute does not effectively define [a word] . . . the Legislature should be supposed to have adopted the common meaning of the word, as assisted by a consideration of the historical origins of the enactment." *Id.* at 490, quoting from *Westinghouse Broadcasting Co.* v. *Commissioner of Revenue*, 382 Mass. 354, 357 (1981). We apply the ordinary meaning of a term in a statute "unless there is something in the statute indicating [it] should have a different significance." *Kerins* v. *Lima*, 425 Mass. 108, 111 (1997), quoting from *Meunier's Case*, 319 Mass. 421, 423 (1946).

In *Jancey*, the court considered the meaning of the term "wages" appearing in the Massachusetts equal pay act, G. L. c. 149, § 105A, and concluded that in order to effectuate the act's remedial purpose of redressing pay discrimination against certain classes or groups, it was appropriate to employ a broad meaning for that term to include all forms of compensation, direct or indirect. "Wages" was construed broadly in *Jancey* so as to permit meaningful comparison between groups or classes of employees where, for example, one group or class may be paid a lower base wage or salary but is compensated in other ways such as tips, bonuses, stipends, or generous fringe benefits, whereas another group or class receives a higher base pay but

with little additional compensation or benefits. *Jancey, supra* at 490-493.

In § 96B, by contrast, "wages" appears in an altogether different context of assuring that police recruits who are in training will receive the same basic pay as regular sworn officers but not necessarily the other economic or non-economic benefits of a collective bargaining agreement. Section 96B distinguishes "regular wages" from other forms of remuneration that might be secured by a collective bargaining agreement and guarantees cadets the right only to receive regular wages plus "reasonable expenses." The arbitrator's decision makes clear that the hazardous pay stipend (a "recurring cash/nonwage increase[]" in the arbitrator's words) is conceptually different from regular wages. Section 96B is not in pari materia with the equal pay act under which *Jancey* broadly construed the meaning of the term "wages." The two do not relate to the same class of persons or things and do not share a common purpose. Hence, *Jancey* offers little real guidance on the meaning of "wages" under § 96B. See *Commonwealth* v. *Smith, supra* at 420-421.

There is no inequity in denying police cadets compensation for hazardous duty that they do not perform. A cadet is not at risk to be put in harm's way as is even an office-bound police officer. In establishing this benefit, the arbitrator specifically noted that it should not be regarded as part of the base pay on which future percentage raises would be based. The stipend was not considered by the arbitrator as anything other than a form of compensation rationally related to the risks attending the duties of a sworn police officer who is authorized to exercise police powers (that plus the arbitrator's stated purpose of maintaining rough parity between city police and city firefighters). Those risks do not exist for a cadet.

The judgment of the Superior Court is reversed, and a new judgment is to be entered declaring that the city of Cambridge has not deprived classes of newly appointed police patrol officers of their rights under G. L. c. 41, § 96B, to receive regular wages while they are or were attending a course of training mandated thereunder.

*So ordered.*