NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-259                                            Appeals Court


DANIEL LANCTOT & others[1]  vs.  TOWN OF BREWSTER.


No. 22-P-259.

Barnstable.     January 10, 2023. – June 22, 2023.

Present:  Sullivan, Shin, & Hodgens, JJ.


Civil Service, Police.  Police, Compensation, Hiring.  Police
    Officer.  Public Employment, Police, Salary.  Massachusetts
    Wage Act.  Labor, Wages.  Statute, Construction.
    Administrative Law, Agency's interpretation of statute,
    Agency's interpretation of regulation.  Practice, Civil,
    Summary judgment.  Declaratory Relief.



    Civil action commenced in the Superior Court Department on
April 3, 2017.

    The case was heard by Mark C. Gildea, J., on motions for
summary judgment.


    Alan H. Shapiro for the plaintiffs.
    Paul J. Hodnett for the defendant.
    Eric R. Atstupenas, for Massachusetts Chiefs of Police
Association, Inc., amicus curiae, submitted a brief.


---

    [1] Brandon Rice and Morgan Vermette.  As is our practice, we
use the caption as it appears in the underlying complaint.

HODGENS, J.  When sending an employee to a police academy, a municipality must pay that person "regular wages provided for the position to which he was appointed."  G. L. c. 41, § 96B. This case clarifies the meaning of that phrase.  We hold that a municipality must pay its employee attending a police academy the "same basic pay as regular sworn officers."  Cambridge v. Cambridge Police Patrol Officers Ass'n, 58 Mass. App. Ct. 522, 526 (2003).  Accordingly, we vacate the entry of summary judgment in favor of the town of Brewster, and remand this matter to the Superior Court for entry of declaratory relief in favor of the plaintiffs.[2]

Background.  As set forth in an agreed statement of facts submitted on summary judgment, Brewster hired the plaintiffs, Daniel Lanctot, Brandon Rice, and Morgan Vermette, sent them to a police academy, and ultimately appointed them as police officers.  More specifically, Brewster solicited applications for a "Police Officer Entrance Examination."  The plaintiffs passed the entrance examination and applied for the position of "Police Officer."  Brewster hired the plaintiffs to a position designated in the municipal bylaws as "Cadet."  According to individual employment contracts with Brewster, each plaintiff would be compensated as a "dispatcher/cadet" while attending the

_____

[2] We acknowledge the amicus brief submitted by the Massachusetts Chiefs of Police Association, Inc.

police academy and would "be sworn in as a Police Officer" upon completion of the required education and training. In accordance with the individual contracts, Brewster paid the plaintiffs at the hourly wage rate for "Cadet" as set by the bylaws, ranging from $19.08 to $20.19 per hour. Each plaintiff successfully completed the academy, and Brewster hired them as probationary police officers at the regular wage rate for police officers set by the collective bargaining agreement -- $23.06 or $23.41 per hour, depending on when each plaintiff was hired -- a higher rate of pay than they received as cadets.

The plaintiffs filed a complaint against Brewster in the Superior Court seeking declaratory relief and alleging a violation of G. L. c. 149, §§ 148, 150 (Wage Act). The parties filed cross motions for summary judgment on an agreed statement of facts. The plaintiffs claimed that under G. L. c. 41, § 96B, they were entitled to be paid as police officers while attending the academy, and Brewster countered that the statute allowed the plaintiffs to be paid a lesser wage because they were hired as cadets. The judge denied the plaintiffs' motion for summary judgment and entered judgment in favor of Brewster.

Discussion. We review motions for summary judgment "de novo." Masonic Temple Ass'n of Quincy, Inc. v. Patel, 489 Mass. 549, 553 (2022). When cross motions for summary judgment are filed on an agreed statement of facts, we review the documentary

record to determine whether judgment may issue as a matter of law. See Kewley v. Department of Elementary & Secondary Educ., 86 Mass. App. Ct. 154, 158 (2014); Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). The proper construction of a statute is a question of law. See Meyer v. Veolia Energy N. Am., 482 Mass. 208, 211 (2019). As summary judgment turned entirely on an agreed statement of facts and the interpretation of G. L. c. 41, § 96B, the present case is "especially suited for summary disposition and de novo review." Kewley, supra.

The dispute in this case arises from two lengthy sentences in the text of G. L. c. 41, § 96B:

> "Every person who receives an appointment to a position on a full-time basis in which he will exercise police powers in the police department of any city or town, shall, prior to exercising police powers, be assigned to and satisfactorily complete a prescribed course of study approved by the municipal police training committee. The provisions of chapter thirty-one [civil service] and any collective bargaining agreement notwithstanding, any person so attending such a school shall be deemed to be a student officer and shall be exempted from the provisions of chapter thirty-one and any collective bargaining agreement for that period during which he is assigned to a municipal police training school [police academy], provided that such person shall be paid the regular wages provided for the position to which he was appointed and such reasonable expenses as may be determined by the appointing authority and subject to the provisions of chapter one hundred and fifty-two [worker's compensation]" (emphases added).

The parties agree that Brewster had an obligation to pay the plaintiffs while they were attending the police academy. They disagree over what "regular wages" were due "for the position to

which [the plaintiffs were] appointed." Id. The plaintiffs contend that they were entitled to be paid as police officers because they "were hired to become full-time police officers." Brewster contends that the statute allowed the plaintiffs to be paid as cadets because that is the "position to which [the plaintiffs were] appointed" while attending the academy.

To resolve this dispute, we look to the language of the statute as "the primary source of insight into the intent of the Legislature." International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983). "Clear and unambiguous language in a statute is conclusive as to legislative intent." Monell v. Boston Pads, LLC, 471 Mass. 566, 575 (2015). In our view, the unambiguous language of the statute requires that the plaintiffs should have been paid as sworn police officers while attending the academy. The statute requires training for anyone who "will exercise police powers." G. L. c. 41, § 96B. The statute further requires that "any person so attending such [police academy] shall be deemed to be a student officer." Id. Student officers are exempt from civil service as well as collective bargaining, "provided" that they are "paid the regular wages provided for the position to which [they were] appointed." Id. Because student officers, hired by a municipality, are appointed for the ultimate purpose of exercising police powers, student officers must logically be paid the "regular wages" for the "position" of

a sworn police officer who exercises such powers.  Id.  The statute assures "that police recruits who are in training will receive the same basic pay as regular sworn officers." Cambridge, 58 Mass. App. Ct. at 526.

An alternative construction of the statute risks exalting form over substance.  Brewster contends that the plaintiffs were hired as cadets who lacked any prospect of exercising "police powers" in that limited capacity.  The record also shows, however, that Brewster hired the plaintiffs so that they would become police officers who would exercise police powers. Brewster solicited applications for a "Police Officer Entrance Examination."  The plaintiffs passed the entrance examination and applied for the position of "Police Officer."  Brewster entered into employment contracts with all three plaintiffs and agreed that upon completion of the required education and training each would "be sworn in as a Police Officer."  The plaintiffs completed the training at the police academy and were sworn in as probationary police officers.  Thus, the plaintiffs received "appointment[s] to a position on a full-time basis in which [they] will exercise police powers."  G. L. c. 41, § 96B. They were entitled to "regular wages" for the "position[s] to which [they were] appointed."  Id.  They were not hired to attend the academy for the purpose of becoming cadets; they were hired to attend the academy for the very purpose of becoming

police officers and should have been paid the "regular wages" of police officers. Id.

Brewster also contends that Municipal Police Training Committee regulations governing the academy lend support to its position. To be enrolled at the academy, student officers do not have to be appointed as sworn police officers. See 550 Code Mass. Regs. § 3.06 (2013) (student officers must be twenty-one years of age, pass physical ability test, and satisfy medical examination). The regulations permit a student to be "sponsored" by a police or law enforcement department, id., instead of being "employed by a law enforcement agency." 550 Code Mass. Regs. § 3.02 (2013) (definition of "Sponsored Candidate"). The regulations also recognize that a student officer might not be employed as a police officer at the time of graduation: "any student officer who does not become employed as a police officer within two years must re-attend the applicable police academy or reserve/intermittent training program prior to exercising police powers." 550 Code Mass. Regs. § 3.03(3) (2013). Contrary to Brewster's argument, none of these regulations conflicts with our view of the plain language of § 96B. A sponsored candidate or one otherwise not employed by a municipality is not a "person who receives an appointment" while attending the academy. G. L. c. 41, § 96B. When a municipality chooses to hire a full-time employee who

becomes a "student officer" at the academy, the municipality is required to pay "regular wages" of a sworn police officer.  Id.

Brewster contends that the language of the statute "did not prohibit" the hiring process it used to appoint and pay the plaintiffs as cadets.  For the reasons already stated, we take a different view.  Our conclusion is reinforced by the requirement in the statute, added by amendment in 1994, that "any person so attending such a school shall be deemed to be a student officer."  G. L. c. 41, § 96B, as amended through St. 1994, c. 333.  Brewster's bylaw creating a "cadet" position (with a discretionary rate of pay) conflicts with the plain language of the statute creating a "student officer" position (with a police officer rate of pay).  G. L. c. 41, § 96B.  "[A] municipality may not enact a bylaw, policy, or regulation that is inconsistent with State law."  Cioch v. Treasurer of Ludlow, 449 Mass. 690, 699 (2007).  See G. L. c. 147, § 21A (establishing process for appointing "police cadets").  Thus, the plain language of G. L. c. 41, § 96B, prohibits precisely the sort of special classification that Brewster has tried to create.

Even if § 96B were susceptible to some ambiguity, however, we discern no legislative intent to pay municipal employees who become student officers at a rate different than sworn officers.  "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the

ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."  Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006), quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934).  A review of the long history of G. L. c. 41, § 96B, shows that the Legislature has consistently required municipal employees attending a police academy to be paid as police officers.

In order to provide a uniform, Statewide training program for municipal police officers, the Legislature enacted "An Act establishing a municipal police training council and requiring police officers in cities and in certain towns to attend a police training school."  St. 1964, c. 564, §§ 1-5.  This legislation added G. L. c. 41, § 96B, and instituted a training requirement for "[e]very person who receives an appointment as a regular police officer on a permanent full-time basis" in cities and towns with 5,000 or more inhabitants.  St. 1964, c. 564, § 3 (adding G. L. c. 41, § 96B).  The appointee would enjoy a grace period of one year to complete the training and would be "paid his wages as police officer."  St. 1964, c. 564, § 3.

Starting in 1967 and continuing for a decade thereafter, the Legislature systematically expanded the reach of the

training mandate under § 96B.  Amendments between 1967 and 1972 reduced the grace period to complete training,[3] added in-service training requirements,[4] expanded training requirements for additional police agencies,[5] and maintained the requirement of police wages for those attending training.[6]  Through an amendment in 1977, the Legislature eliminated the grace period, extended training requirements to "[e]very person who receives an appointment to a position on a permanent full-time basis in which he will exercise police powers," and added a training requirement for anyone "appointed as a reserve, or intermittent police officer, in a city or town."  St. 1977, c. 932.  The 1977 amendment further added to the patchwork of police agencies

---

[3] See St. 1967, c. 504 (reduced grace period to six months).

[4] St. 1968, c. 742 (added "in-service" training requirement).

[5] St. 1968, c. 742 (extended in-service training requirement to include "metropolitan district commission police [and] the capitol police"); St. 1971, c. 172 (extended in-service training requirement to include "Massachusetts Bay Transportation Authority police"); St. 1972, c. 697 (extended initial training and in-service training to include all full-time municipal police, "the metropolitan district commission police, the Massachusetts Bay Transportation Authority police, the capitol police, [and] . . . an employee of the registry of motor vehicles having police powers").

[6] St. 1967, c. 504 (trainee "shall be paid his wages as police officer"); St. 1968, c. 742 (in-service trainee shall be paid "his regular wages as a police officer"); St. 1972, c. 697 (initial and in-service trainee shall be paid wages as "police officer").

within the sweep of the training requirement by including the "division of law enforcement within the office of the secretary of the executive office of environmental affairs." Id. The 1977 amendment also added the language that is central to the instant dispute: "Any person so attending such a school shall be paid the wages provided for the position to which he was appointed and such reasonable expenses as may be determined by the appointing authority" (emphasis added). Id.

When read in the context of the prior amendments and existing statutes regarding police powers, the language in the 1977 amendment is a clear effort to mandate training for those who would be exercising police powers (regardless of the formal occupational title). See, e.g., St. 1970, c. 534, § 2 (granting police powers to Registry of Motor Vehicles "supervising inspectors . . . , supervisors of special services and assistant supervisors of special services, investigators, examiners and safety instructors") (amending G. L. c. 90, § 29; partially repealed by St. 1991, c. 412, § 58); St. 1938, c. 249, § 5 (granting police powers to "superintendent [of buildings] and his capitol police") (amending G. L. c. 8, § 12; repealed by St. 1984, c. 413, § 12); St. 1939, c. 441, § 1 (granting police powers to "call officer" of Metropolitan District Commission) (amending G. L. c. 92, § 62A; repealed by St. 1991, c. 412, § 65). Because of the various formal titles assigned to those

entrusted with police powers in the diverse law enforcement landscape of 1977, the amendment necessarily included the broad phrase, "position to which he was appointed," as a mechanism to include all the wide-ranging personnel included under the new training mandate.  St. 1977, c. 932.  We do not read this phrase as an effort by the Legislature to deprive student officers from receiving wages of a police officer or as an invitation to municipalities to craft an alternative wage structure.  See Everett v. Revere, 344 Mass. 585, 589 (1962), quoting Walsh v. Commissioners of Civ. Serv., 300 Mass. 244, 246 (1938) (proper statutory construction requires interpretation "with reference to the pre-existing law" that results in "harmonious and consistent body of law").

Conclusion.  The judgment of the Superior Court is vacated, and judgment shall enter for the plaintiffs on Count I of their complaint seeking declaratory relief.  The case is remanded to the Superior Court for entry of a declaration that the town of Brewster violated G. L. c. 41, § 96B, by failing to pay the plaintiffs regular wages as police officers while they attended the police academy, and for further proceedings consistent with this opinion.[7]

---

[7] The parties have not briefed, and we do not reach, any issue as to Count II of the plaintiffs' complaint concerning the town's liability under G. L. c. 149, §§ 148, 150, or as to the issue of damages.

<u>So ordered</u>.