NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11661

NESTO MONELL & others[1]  vs.  BOSTON PADS, LLC, & others.[2]


Suffolk.     December 2, 2014. - June 3, 2015.

Present:  Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.


Independent Contractor Act.  Broker.  License.  Real Property,
     License to sell.  Labor, Wages.  Massachusetts Wage Act.



Civil action commenced in the Superior Court Department on
October 17, 2011.

A motion for partial summary judgment was heard by Robert
C. Cosgrove, J., and entry of final judgment was ordered by
Edward P. Leibensperger, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Hillary Schwab (Brant Casavant with her) for the
plaintiffs.


_____

     [1] Jonathan Gibson, Rachael Butcher, Benjamin Smith, Lindsey
Burnes, and Ann McGovern.  The plaintiffs sued on behalf of
themselves and others similarly situated.

     [2] Jacob Realty, LLC; NextGen Realty, Inc.; RentMyUnit.Com,
Inc., doing business as Boardwalk Properties; Demetrios
Salpoglou; and Yuan Huang.

Stephen M. Perry (Robert S. Kutner with him) for the defendants.

Ian O. Russell & Nicole Horberg Decter, for Massachusetts Employment Lawyers Association & another, amici curiae, submitted a brief.

Philip S. Lapatin & Nathaniel F. Hulme, for Massachusetts Association of Realtors & another, amici curiae, submitted a brief.

HINES, J.  We granted the plaintiffs' application for direct appellate review to determine whether the independent contractor statute, G. L. c. 149, § 148B, which makes it a violation of the statute to fail "to properly classify an individual as an employee," applies to real estate salespersons licensed under, and affiliated with and working for a licensed brokerage firm pursuant to G. L. c. 112, § 87RR.  A Superior Court judge concluded that the independent contractor statute did not apply in these circumstances to the salespersons in this industry.  We affirm.

1.  Background.  We summarize the material undisputed facts.  The defendants Jacob Realty, LLC (Jacob Realty); NextGen Realty, Inc. (NextGen); and RentMyUnit.Com, Inc., doing business as Boardwalk Properties (Boardwalk Properties) (collectively, business entities), are licensed Massachusetts real estate brokerage firms that are in the business of renting and selling real estate in Massachusetts.[3]  The defendants Demetrios

---

[3] The defendants deny that defendant Boston Pads, LLC, operates a real estate office and that it had any real estate

Salpoglou and Yuan Huang are members of Jacob Realty and shareholders of NextGen and Boardwalk Properties, and are involved in the operations of these business entities. Salpoglou serves as the broker of record for the business entities.

The plaintiffs Nesto Monell, Jonathan Gibson, Rachael Butcher, and Lindsey Burnes were licensed real estate salespersons who worked for Jacob Realty under its real estate broker's license. The plaintiff Ann McGovern was a licensed real estate salesperson who worked for NextGen under its real estate broker's license. The plaintiff Benjamin Smith was a licensed real estate salesperson who worked for Boardwalk Properties under its real estate broker's license.

Throughout the course of their relationship, the defendant business entities classified the plaintiffs as independent contractors.[4] The defendant entities required the plaintiffs to

---

agents associated with it. The defendants contend that Boston Pads, LLC, is a professional consulting services firm that does not trade, lease, buy, or sell real estate for commissions. For the purpose of this opinion, when we refer to the defendants or to the business entities, such references shall not include Boston Pads, Inc.

[4] The defendants assert that the business entities are legally distinct entities and that a salesperson associated with one business entity was not otherwise associated with another business entity. This assertion has no bearing on the issues before us. Therefore, we decline to address the point.

work sixty "front desk hours" during training[5] and, thereafter, in some cases complete monthly "office hours" duty, which involved answering telephone calls from, and greeting, prospective clients.[6] The salespersons were able to select the "office hours" that they wished to work. The business entities, however, allowed salespersons only one shift change every two months.

At the commencement of their relationship with the business entities, the plaintiffs signed nondisclosure, nonsolicitation, and noncompete agreements[7] and were required to undergo a training program. The business entities encouraged the plaintiffs to purchase a day planner and required them to obtain

---

[5] During "front desk hours," the business entities asked salespersons to perform "warm calling," which included speaking with landlords, entering information into the business entities' database, and arranging times to meet with landlords to obtain keys and visit properties.

[6] Specifically, the training guide provided that during office hours shifts the salespersons were to answer the telephone, greet clients and landlords, take out the trash, update facsimiles, telephone landlords, acquire new listings, and answer agent telephone calls. Under the guide, salespersons were prohibited during this time to schedule showings of available apartments for rent or property for sale.

[7] Various forms used by the business entities, including an application for employment, an equal opportunity statement, and an antiharassment policy, contained language referencing the salesperson's "employment" with the business entities. The defendants admit that the various forms were used by them at one time or another, but make no admissions regarding whether the forms were used with the named plaintiffs.

a cellular telephone with a "617" area code,[8] to adhere to a dress code, and to submit to various disciplinary actions if they did not meet their productivity goals.

The defendant entities compensate their salespersons pursuant to a commission policy. Under the policy salespersons are paid on a "commission-only basis" and expressly will not be treated as employees "with respect to compensation for taxes or any other purpose." A commission is earned on completion by the salesperson of a rental or sales transaction involving a client's real estate. The commission due to the salesperson usually amounts to a percentage (typically fifty per cent) of a transaction's gross commission, less any applicable deductions.[9] The business entities receive the balance as their portion of the fee charged to the client. Commissions are paid "only when a transaction is completed in its entirety" as defined by the policy. Pursuant to the policy, the business entities "will issue [a] Form 1099-MISC" to each salesperson and each

---

[8] The business entities instructed salespersons on what information they must enter into their cellular telephones and on how they were to answer their telephones.

[9] Deductions include a monthly "desk fee" of fifty dollars for part-time salespersons and seventy-five dollars for full-time salespersons. For salespersons who elect to participate in a "farm program," whereby a contractor would manually update a salesperson's real estate listings on Web sites, a deduction of five dollars per day also is assessed. There is a dispute in the record whether the plaintiffs were compelled to elect to join the farm program.

salesperson "agrees to provide [the business entities] with a signed W-9 [form]." Thus, the plaintiffs were responsible for paying their own taxes.

In 2011, the plaintiffs filed a complaint against the defendants in the Superior Court. As relevant here, the plaintiffs alleged that the defendants violated the independent contractor statute by misclassifying them as independent contractors when they actually were employees.[10] On this count of the complaint, the plaintiffs moved for partial summary judgment, which the judge denied. The judge then granted partial summary judgment in favor of the defendants.[11] The judge determined that there is a conflict between the independent contractor and real estate licensing statutes insofar as a real estate salesperson would not be able to satisfy all three indicia of an independent contractor relationship while simultaneously complying with the real estate licensing statute. Based on his determination that the real estate licensing

---

[10] The plaintiffs also alleged that the defendants failed to pay them wages owed under G. L. c. 149, § 148; failed to compensate them in accordance with minimum wage laws pursuant to G. L. c. 151, § 20; and failed to pay them time and one-half for all hours worked over forty hours per week in violation of G. L. c. 151, § 1A. The judge did not rule on these claims.

[11] The plaintiffs then filed an assented-to motion to dismiss the remaining counts of their complaint without prejudice should the judge's ruling be reversed on appeal, which was allowed.

statute was more recently amended and is more specific than the independent contractor statute, the judge concluded that, pursuant to statutory construction principles, the independent contractor statute did not control, meaning that the defendants did not fail properly to classify the plaintiffs as employees and therefore could not be liable for a violation of G. L. c. 149, § 148B.

2. Standard of review. Summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). Moreover, "[w]e exercise de novo review over questions of statutory construction." Atlanticare Med. Ctr. v. Commissioner of the Div. of Med. Assistance, 439 Mass. 1, 6 (2003). Because the issue before us is one of statutory construction, we begin by providing an overview of the relevant statutes.

3. Statutory overview. a. Independent contractor statute. The Commonwealth's wage laws are set forth in provisions in G. L. c. 149 (Wage Act). Within the Wage Act is the independent contractor statute. G. L. c. 149, § 148B. Effective July 19, 2004, the Legislature amended § 148B by

striking out its language and replacing it in its entirety.  See

St. 2004, c. 193, § 26.  The statute has not since been amended.

The independent contractor statute, states, in relevant

part:

"(a) For the purpose of this chapter and chapter 151[12] an individual performing any service, except as authorized under this chapter, shall be considered to be an employee under those chapters unless:--

"(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

"(2) the service is performed outside the usual course of the business of the employer; and,

"(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

"(b) The failure to withhold federal or state income taxes . . . shall not be considered in making a determination under this section.

". . .

"(d) Whoever fails to properly classify an individual as an employee according to this section and in so doing fails to comply, in any respect, with [G. L. c. 149], or [G. L. c. 151, § 1, 1A, 1B, 2B, 15, or 19], or [G. L. c. 62B],[13] shall be punished and shall be subject to all of the criminal and civil remedies, including debarment [from public bidding], as provided in [§ 27C] of this chapter.

---

[12] General Laws c. 151 is known as the minimum fair wage law and has provisions pertaining to the minimum fair wage as well as overtime pay.  G. L. c. 151, §§ 1, 1A, 1B, 22.

[13] General Laws c. 62B sets forth the Commonwealth's wage withholding laws.

Whoever fails to properly classify an individual as an employee according to this section and in so doing violates [G. L. c. 152][14] shall be punished as provided in [G. L. c. 152, § 14,] and shall be subject to all of the civil remedies, including debarment [from public bidding], provided in [§ 27C] of this chapter. . . ."

G. L. c. 149, § 148B.

As noted above, the independent contractor statute was adopted as part of St. 2004, c. 193, which is entitled, "An Act further regulating public construction in the Commonwealth." The act's emergency preamble states the purpose of the act is "to regulate further public construction in the commonwealth." Id. Although the statute was part of legislation making changes to the public construction industry, the Legislature kept it in c. 149, thus leaving it applicable to a wide range of industries. See Lipsitt v. Plaud, 466 Mass. 240, 245 (2013) (since enactment of Wage Act in 1886, Legislature has broadened scope of employees covered).[15]

We have stated that the purpose of the independent contractor statute is "to protect workers by classifying them as employees, and thereby grant them the benefits and rights of

---

[14] General Laws c. 152 pertains to worker's compensation benefits.

[15] Under the Wage Act provisions in G. L. c. 149, the Legislature has also broadened the type of eligible compensation covered, extending coverage to commissions that are "definitely determined" and "due and payable." Lipsitt v. Plaud, 466 Mass. 240, 245 & n.8 (2013), quoting St. 1943, c. 467.

employment, where the circumstances indicate that they are, in fact, employees."  Depianti v. Jan-Pro Franchising Int'l, Inc., 465 Mass. 607, 620 (2013), quoting Taylor v. Eastern Connection Operating, Inc., 465 Mass. 191, 198 (2013).  See Cumpata v. Blue Cross Blue Shield of Mass., Inc., 113 F. Supp. 2d 164, 168 (D. Mass. 2000) ("Wage Act is meant to protect employees from the dictates and whims of shrewd employers").  Indeed,

> "[m]isclassification not only hurts the individual employee; it also imposes significant financial burdens on the Federal government and the Commonwealth in lost tax and insurance revenues.  Moreover, it gives an employer who misclassifies employees as independent contractors an unfair competitive advantage over employers who correctly classify their employees and bear the concomitant financial burden."

Somers v. Converged Access, Inc., 454 Mass. 582, 593 (2009).

To this end, the independent contractor statute "establishes a framework for determining whether a worker is an employee or an independent contractor."  Depianti, 465 Mass. at 621.  The statute establishes a presumption that "an individual performing any service" is an employee.  Id.  See G. L. c. 149, § 148B (a) ("an individual performing any service . . . shall be considered to be an employee").  Next, the statute "lays out three indicia [or factors] of an independent contractor relationship, all three of which must be established to rebut the presumption of employment."  Depianti, supra.  In interpreting the statute, we have stated that, "[i]n light of

the statute's broad remedial purpose, 'it would be an error to imply . . . a limitation where the statutory language does not require it.'"  Id., quoting Psy-Ed Corp. v. Klein, 459 Mass. 697, 708 (2011).

b.  Real estate licensing and registration scheme.  General Laws c. 112, §§ 87PP through 87DDD½, and G. L. c. 112, §§ 65A through 65E, set forth the licensing and registration provisions governing real estate brokers and salespersons.[16]  A real estate "broker," for purposes here, is defined as including:

> "any person who for another person and for a fee, commission or other valuable consideration, or with the intention or in the expectation or upon the promise of receiving or collecting a fee, commission or other valuable consideration, does any of the following: -- sells, exchanges, purchases, rents or leases, or negotiates, or offers, attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of any real estate, or lists or offers, attempts or agrees to list any real estate, or buys or offers to buy, sell or offers to sell . . . real estate."

G. L. c. 112, § 87PP.  In contrast, a real estate "salesman" or salesperson is "an individual who performs any act or engages in any transaction included in the foregoing definition of a broker, except the completing of the negotiation of any agreement or transaction which results or is intended to result in the sale, exchange, purchase, renting or leasing of any real estate."  Id.  Both brokers and salespersons are required to be

---

[16] Regulations governing real estate brokers and salespersons appear at 254 Code Mass. Regs. §§ 2.00 through 7.00 (2013).

licensed.  G. L. c. 112, § 87RR.  "The examination for a [salesperson's] license shall be based upon the same general subject matter as for a broker's license, but shall be more elementary in nature."  G. L. c. 112, § 87SS.

Real estate salespersons must conduct business with, or be affiliated with, a licensed broker.  G. L. c. 112, § 87RR.  See 254 Code Mass. Regs. § 3.00(6) (1998) ("A licensed salesperson must be engaged by a licensed broker and a licensed salesperson shall not conduct his own real estate business").  A real estate salesperson may affiliate with only one broker.  G. L. c. 112, § 87VV (when real estate salesperson affiliates with broker, salesperson "shall not act as [salesperson] for any other licensed broker while so affiliated, nor accept any valuable consideration for the performance of any act as a real estate [salesperson] from any person except the broker with whom he [or she] is affiliated").  Concerning the relationship between the broker and his or her affiliated salesperson, § 87RR provides in relevant part:

> "No [salesperson] may conduct or operate his [or her] own real estate business nor act except as the representative of a real estate broker who shall be responsible for the [salesperson] and who must approve the negotiation and completion by the [salesperson] of any transaction or agreement which results or is intended to result in the sale, exchange, purchase, renting or leasing of any real estate or in a loan secured or to be secured by mortgage or other encumbrance upon real estate.  No [salesperson] shall be affiliated with more than one broker at the same time nor shall any [salesperson] be entitled to

any fee, commission or other valuable consideration or solicit or accept the same from any person except his [or her]licensed broker in connection with any such agreement or transaction.  A [salesperson] may be affiliated with a broker either as an employee or as an independent contractor and may, by agreement, be paid as an outside salesperson on a commission-only basis, but shall be under such supervision of said broker as to ensure compliance with this section and said broker shall be responsible with the [salesperson] for any violation of [G. L. c. 112, § 87AAA,] committed by said [salesperson]."

Section 87AAA enumerates numerous grounds for the suspension, revocation, or refusal to renew the license of a broker or salesperson.  These grounds include a range of conduct, the prohibition of which is intended to promote fairness and integrity in real estate transactions.[17]  Id.  See 254 Code Mass.

---

[17] The proscribed conduct is set forth in G. L. c. 112, § 87AAA, as follows:  "(a) knowingly made any substantial misrepresentation; (b) acted in the dual capacity of broker and undisclosed principal in the same transaction; (c) acted for more than one party to a transaction without the knowledge and consent of all the parties for whom he [or she] acts; (d) failed, within a reasonable time, to account for or remit any moneys belonging to others which have come into his [or her] possession as a broker or [salesperson]; (e) paid commissions or fees to or divided the same with any person, who, being required to be licensed as a broker or [salesperson] in this or any other [S]tate, is not so licensed; (f) accepted, given or charged any undisclosed commission, rebate or profit on expenditures for a principal; (g) induced any party to a contract or lease relating to real estate to break the same when such action is effected for the personal gain of the licensee; (h) commingled the money or other property of his [or her] principal with his [or her] own; (i) failed to give to both the buyer and seller a copy of the purchase and sale agreement; (j) committed any act expressly prohibited in [§§ 87RR to 87CCC]; (k) affirmatively solicited for sale, lease, or the listing for sale or lease, of residential property on the grounds of alleged change of value due to the presence or the prospective entry into the neighborhood of a person or persons of another race, economic

Regs. § 3.00 (2005) (setting forth professional standards of practice as well as additional grounds for discipline).

4. Discussion. In this appeal, we address the conflict between the independent contractor statute and the real estate licensing statute which, respectively, support the plaintiffs' claim that they are "employees" and the defendants' claim that the plaintiffs are or can be "independent contractors." The plaintiffs rely on the independent contractor statute insofar as it creates a presumptive employee status that, in its application, includes real estate salespersons. The defendants rely on the real estate licensing statute providing that a "[salesperson] may be affiliated with a broker either as an employee or as an independent contractor." See G. L. c. 112, § 87RR.

"The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be

level, religion or ethnic origin or distributes, or causes to be distributed, material or makes statements designated to induce a residential property owner to sell or lease his [or her] property due to such change in the neighborhood; or (l) accepted from a prospective seller a net listing, an agreement to sell real estate for a stated price which authorized the broker to keep as commission any amount of money received from the sale of said real estate in excess of the stated price."

remedied and the main object to be accomplished." Lowery v. Klemm, 446 Mass. 572, 576-577 (2006), quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934). Clear and unambiguous language in a statute is conclusive as to legislative intent. Commissioner of Correction v. Superior Court Dep't of the Trial Court for the County of Worcester, 446 Mass. 123, 124 (2006). In addition, "a remedial statute . . . should be given a broad interpretation . . . in light of its purpose . . . to 'promote the accomplishment of its beneficent design.'" Seller's Case, 452 Mass. 804, 810 (2008), quoting Neff v. Commissioner of the Dep't of Indus. Accs., 421 Mass. 70, 73 (1995). In cases "[w]here two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose." Federal Nat'l Mtge. Ass'n v. Hendricks, 463 Mass. 635, 641 (2012), quoting Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513-514 (1975).

As an initial matter, there is no question that the independent contractor statute is a remedial statute. See Depianti, 465 Mass. at 621. It thus should be given a construction that furthers, not defeats, its purpose. See id. The difficulty in seeking to construe it in harmony with the real estate licensing statute, however, is that the real estate licensing statute makes it impossible for a real estate salesperson to satisfy the three factors required to achieve

independent contractor status, all of which must be satisfied to defeat the presumption of employee status.  For instance, under the second factor of the independent contractor statute, the employer must prove that "the service [of the worker] is performed outside the usual course of the business of the employer."  G. L. c. 149, § 148B (a) (2).  Because under G. L. c. 112, § 87RR, "[n]o [salesperson] may conduct or operate his [or her] own real estate business nor act except as the representative of a real estate broker," an employer can never prove that the service is performed outside the usual course of the employer's business.  Under the express language of § 87RR, a salesperson is prohibited from performing any services other than as the broker's representative and as part of the broker's business.  Under the third factor of the independent contractor statute, the employer must prove that the worker "is customarily engaged in an independently established" business in the real estate industry.  See G. L. c. 149, § 148B (a) (3).  General Laws c. 112, § 87RR, however, prohibits a real estate salesperson from operating his or her own real estate business.  Thus, compliance with this third factor also is not possible.

The exclusion of real estate salespersons from independent contractor status clearly was not intended by the Legislature.  While § 87RR expressly authorizes a real estate salesperson to affiliate with a broker as an employee, it also expressly

authorizes an association as an <u>independent contractor</u>.  See <u>id</u>. ("A [salesperson] may be affiliated with a broker <u>either</u> as an employee <u>or</u> as an independent contractor . . ." [emphasis added]).  We cannot view this express language as superfluous. See <u>Casa Loma, Inc</u>. v. <u>Alcoholic Beverages Control Comm'n</u>, 377 Mass. 231, 234 (1979) ("It is a common tenet of statutory construction, that, wherever possible, no provision of a legislative enactment should be treated as superfluous").

Unlike the judge, we do not view the 2010 amendment to § 87RR to be instructive in resolving the conflict.  The 2010 amendment to § 87RR added language authorizing brokers and salespersons to enter into agreements whereby a real estate salesperson could be paid on a commission-only basis.  See St. 2010, c. 307, § 1 (as applying to salespersons, adding in second paragraph, in third sentence, "and may, by agreement, be paid as an outside salesperson on a commission-only basis").  The judge concluded that, by virtue of this amendment and, in contrast, of the independent contractor statute being left intact, the Legislature intended that real estate salespersons qualify as independent contractors despite the inherent level of control brokers must exercise over them.  Although this interpretation is reasonable, it is not dispositive of the issue before us because when enacting St. 2010, c. 307, § 1, the Legislature could have deleted the reference in § 87RR that permits a real

estate salesperson to be affiliated with a broker either as an employee or an independent contractor. The Legislature took no action regarding the nature of this affiliation. Thus, the amendment does not reflect an affirmation that a real estate salesperson is an independent contractor. It reflects an affirmation that the salesperson may be an independent contractor, but he or she also may be an employee.[18] Where the Legislature left the reference in place regarding the nature of the affiliation, we conclude that the 2010 amendment simply was intended to address how a real estate salesperson, whether an employee or an independent contractor, could be paid, authorizing payment in the form of commissions only.[19] The amendment cannot be said to speak to the nature of the affiliation between the broker and salesperson other than confirming the fact that the affiliation may be either as an employee or as an independent contractor.

The judge's reliance on the familiar canon of construction providing that a specific statute, in this case § 87RR, controls

---

[18] The defendants concede this point: "It is true that the November 2010 amendment confirms the lawfulness of engaging licensed salespersons as employees, just as it is true that the amendment confirms the lawfulness of engaging them as independent contractors."

[19] The fact that a real estate salesperson may be paid in the form of commissions only and that commissions may be subject to the Wage Act does not negate the applicability of the independent contractor statute. See note 15, supra.

over the provisions of a general statute, such as the independent contract statute, however, is appropriate here.  See TBI, Inc. v. Board of Health of N. Andover, 431 Mass. 9, 18 (2000); Doe v. Attorney Gen. (No. 1), 425 Mass. 210, 215 (1997).  As outlined earlier, real estate brokers are responsible for their affiliated salespersons' compliance with a broad range of statutory provisions and regulations.  No doubt this supervision and control has been required due in part to the difference in training and testing that is required of real estate brokers in comparison to salespersons.  It also necessarily is in place to protect the public, namely the consumers who are selling, purchasing, leasing, or renting real estate in a highly regulated field.  Despite that level of supervision and control mandated by law, § 87RR nevertheless expressly preserves a salesperson's ability to be affiliated with a broker as either an employee or an independent contractor.  Thus, it is § 87RR that controls in this instance, not the more general independent contractor statute.  Were we to conclude otherwise, we would be subjecting real estate brokerage firms to potential criminal penalties for misclassifying its real estate salespersons in a manner expressly authorized by the real estate licensing statute.  See G. L. c. 149, § 148B (d) (failure to properly classify individual as employee and to comply with other

provisions of Wage Act or Fair Minimum Wage Law subjects employer to criminal penalties).

That being said, we underscore the limited nature of our holding. The plaintiffs' complaint alleged four counts: the first for misclassification under the independent contractor statute, G. L. c. 149, § 148B; the second for failing to make timely payment of wages and taking improper deductions, under G. L. c. 149, § 148; the third for failure to pay the State statutory minimum wage for all hours worked, in violation of G. L. c. 151, §§ 1 et seq.; the fourth for failure to pay time and one-half for hours worked in excess of forty hours per week, in violation of G. L. c. 151, § 1A. See note 10, supra. The judge granted summary judgment to the defendants only on the first count. Following the judge's decision, the plaintiffs dismissed the remaining counts without prejudice in order to pursue this appeal.

Because we agree with the Superior Court judge that the independent contractor statute does not apply to real estate salespersons, we conclude that the judge properly granted summary judgment on the first count: the plaintiffs cannot prevail on a claim based on a statute that does not apply to them. In reaching that conclusion, however, we take no position on whether the plaintiffs in fact are employees or independent contractors, or on how, in the absence of the framework

established by the independent contractor statute, it may be determined whether a real estate salesperson is properly classified as an independent contractor or employee.  Earlier proposed legislation specifically provided that "a [salesperson] or broker may be affiliated with a broker either as an employee or as an independent contractor, as determined by their written agreement and customary work practices."  St. 2008, c. 304, § 8. The Governor, however, disapproved this language, concluding that it "would allow real estate sales persons and brokers to rely on written agreements to avoid the classification rules for independent contractors."  See 2008 House Doc. No. 5075.  The statute ultimately enacted expressly stated that a commission-only compensation structure may be established "by agreement." G. L c. 112, § 87RR.  It does not, however, indicate how a broker and real estate salesperson may create an independent contractor relationship, rather than an employment relationship.

Because the plaintiffs based their argument on appeal on the contention that they are employees under the framework set forth in the independent contractor statute, they did not address how the court should determine the nature of their relationship if the court determines, as we have, that the framework does not apply.  In light of the potential impact of that issue on the real estate industry as a whole and its significant ramifications for real estate salespersons' access

to the rights and benefits of employment, we think it prudent to leave that issue's resolution to another day, when it has been fully briefed and argued.  Should the Legislature be so inclined, it may wish to clarify how a real estate salesperson may gain employee status under the real estate licensing statute.

5.  <u>Conclusion</u>.  For the foregoing reasons, we affirm the judge's order denying the plaintiffs' motion for partial summary judgment and granting partial summary judgment to the defendants.

<u>So ordered</u>.