Cosgrove, Robert C., J.
The plaintiff, Thomas Hussey, filed this action seeking judicial review, pursuant to G.L.c. 30A, §14, of a decision of the Board of Appeal on Motor Vehicle Liability Policies and Bonds affirming the action of the Registry of Motor Vehicles suspending Hussey’s Commercial Driver’s License for Life under G.L.c. 90F, §9. This matter is before the court on the parties’ cross motion for judgment on the pleadings pursuant to Mass.RCiv.P. 12(c) and Superior Court Standing Order 1-96. For the reasons discussed below, the plaintiffs motion for judgment on the pleadings is denied and the Board’s decision is affirmed.
Discussion
On March 21, 2013, Hussey was arrested by the Bridgewater Police Department and charged with operating a motor vehicle under the influence of alcohol (“OUI”), second offense, pursuant to G.L.c. 90, §24. Following his arrest, the police offered Hussey the opportunity to take abreath or blood test pursuant to G.L.c. 90, §24(l)(f)(l). Hussey declined. He had previously been convicted of OUI in 1998. In light of Hussey’s refusal to take the test and his prior OUI conviction, the Registrar of Motor Vehicles revoked Hussey’s Class D driver’s license for three years pursuant to G.L.c. 90, §24(l)(f)(l) and his Commercial Driver’s license for life pursuant to G.L.c. 90F, §9(B) and 49 C.F.R. §383.51.
On March 10, 2014, following a bench trial in the Brockton District Court, Hussey was found not guilty of the OUI charge. That same day, Hussey filed a motion for restoration of his license to operate a motor vehicle, pursuant to G.L.c. 90, §24(l)(f)(l), which was allowed by the court and presented to the Registrar. The Registrar reinstated Hussey’s class D driver’s license, but declined to reinstate his Commercial Driver’s license. Hussey appealed to the Board, which, after hearing on May 29,2014, affirmed the Registrar’s decision on June 16, 2014. The court reasoned that under both federal and Massachusetts state law, Hussey was disqualified for life from operating a commercial motor vehicle. The Board was also of the view that if it failed to disqualify Hussey for life, the Commonwealth might suffer a loss of federal funding. Acknowledging that under a prior case with virtually identical operative facts, it had ruled the opposite way, the Board simply stated that it had “reconsidered its previous position,” as it was entitled to do.
Hussey then filed on November 5, 2014 in the Brockton District Court a “Motion to Amend Motion for License Reinstatement,” specifically requesting that that court “pursuant to application of M.G.L. Chapter 90 §24N and M.G.L. Chapter 90 §24(l)(i)(l) . . . return his Class D as well as commercial driver’s license to him after a not guilty verdict for the offense alleging that he was operating under the influence of alcohol.” The motion noted that Hussey “has no pending charges, this is a first offense and he is gainfully employed as a truck driver and therefore has need to have his Class D as well as commercial driver’s license returned.”[2] That same day the same judge who had conducted Hussey’s bench trial and ruled on his original motion endorsed the motion to amend, “with no objection from the Commonwealth, this motion is allowed.”
Having sought judicial review of the Board’s decision, Hussey argues that it should be reversed because (1) the Board has violated his due process rights under G.L.c. 30A, §14(7)(a); (2) the Board exceeded its statutory authority under G.L.c. 30A, §14(7)(b); (3) the Board’s decision violated G.L.c. 30A, §14(7)(c); and (4) the Board’s actions were arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law under G.L.c. 30A, §14(7)(g).
In this court’s view, all of Hussey’s arguments turn on issues of statutory construction. As the Supreme Judicial Court has recently reiterated,
‘The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished.” Lowery v. KLemm, 446 Mass. 572, 576-77 (2006), quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934). Clear and unambiguous language in a statute is conclusive as to legislative intent. Commissioner of Correction v. Superior Court Dept. of the Trial Court, 446 Mass. 123, 124 (2006). In addition, “a remedial statute . . . should be given a broad interpretation ... in light of its purpose ... to ‘promote the accomplishment of its beneficent design.’ ” Seller’s Case, 452 Mass. 804, 810 (2008), quoting Neff v. Commissioner of the Dept. of Indus. Accs., 421 Mass. 70, 73 (1995). In cases “[w]here two or more statutes relate to the same subject matter, they should be construed together so as to constitute *714 a harmonious whole consistent with the legislative purpose.” Federal Nat'l Mtge. Ass’n v. Hendricks, 463 Mass. 635, 641 (2012), quoting Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513-14 (1975).
Monell v. Boston Pads, LLC, 471 Mass. 566, 574-75 (2015).
The Board relies on G.L.c. 90F, §9(B), which provides in pertinent part that “[a]ny person shall be disqualified for life [from operating a commercial motor vehicle] if convicted of 2 or more violations of any of the offenses specified in subsection (A), . . .or any combination of those offenses, arising from 2 or more separate incidents.” Subsection (A) lists five triggering events, including conviction of “operating ... a motor vehicle under the influence of alcohol or drugs” and “[defusing to submit to a chemical test or analysis of the person’s breath or blood after operating ... a motor vehicle.”
There is no question that Hussey was convicted of OUI in 1998. There is equally no question that when he was arrested on March 21, 2013, he refused a breathalyzer test. Accordingly, under the plain terms of the statute, he had two or more violations, thereby triggering a lifetime disqualification from operating a commercial motor vehicle. Hussey argues, however, that 90F’s lifetime disqualification must yield to the district court judge’s purported reinstatement order. In his view, “[t]he legislature enacted G.L.c. 90, §24 (l)(f)(l)(iii) in order to provide a mechanism to get a license reinstated after it has been suspended for refusing a breath test after exercising the constitutional right to a trial and being acquitted.” Hussey argues that “for all essential purposes G.L.c. 90, §24(l)(f)(l)(iii) reverses the chemical test refusal, [and] thus the board’s reliance on this event is in error as a basis to revoke” his commercial driver’s license for life.
Under G.L.c. 90, §24(l}(f)(l)(iii), once a “not guilty” plea enters, one charged under §24 or certain other statutes, provided that he has no other alcohol-related charges pending against him, is entitled to a hearing on whether his license shall be restored. At that hearing, he enjoys a rebuttable presumption of restoration, which the Commonwealth may overcome by showing “by a fair preponderance of the evidence” returning his license would likely endanger public safety.[3]
As noted, Hussey was charged under G.L.c. 90, §24, with OUI, second offense. Thus, the reinstatement procedures set forth in G.L.c. 90, §24(l)(f)(l)(iii), should apply to him unless contravened, by word or implication, by some other statute or statutes.
As the defendants point out, in Chapter 246 of the Acts of 1990, the legislature adopted “An Act Further Regulating the Licensing of Commercial Motor Vehicle Operators.” In section 1 of the Act, the legislature declared that its purpose “is to implement the federal Commercial Motor Vehicle Safety Act of 1986 ... [including the] disqualifying [of] operators of commercial motor vehicles who have committed certain criminal, or other offenses, or serious traffic violations.” The Act also provides that it “is a remedial law and shall be liberally construed to promote the public health, safety and welfare. To the extent that the provisions of this chapter conflict with the general operator licensing provisions of chapter ninety, this chapter prevails.” Section 2 of Chapter 246 amended the general laws by enacting G.L.c. 90F, quoted in part above.
G.L.c. 90F, §9(B) provides that one shall be disqualified “for life” if convicted of two or more OUI offenses outlined in G.L.c. 90F, §9(A)(l)-(5), or after two or more refusals to submit to a chemical test of the breath or blood, or any combination of those offenses arising from two or more separate incidents. Unlike G.L.c. 90, §24, G.L.c. 90F makes no provision for subsequent restoration of a license where driver is found not guilty in the resultant court case. The question remains, however, whether in the absence of such a provision in G.L.c. 90F, G.L.c. 90, §24(l)(f)(l)(iii) offers an avenue for the restoration of a commercial driving license. For a number of reasons, the court is persuaded that it does not.
First, it is clear from G.L.c. 90, §24(1) (f) (1) (iii) itself that the legislature well knew how to craft a license restoration provision. Chapter 90F consists of seventeen separate sections, comprehensively regulating the operation of commercial motor vehicles. The omission of a license restoration provision from Chapter 90F, under normal principles of statutory construction must be presumed to be intentional, particularly where Chapter 90F otherwise mirrors a number of provisions of G.L.c. 90, §24, including its implied consent provision. See G.L.c. 90F, §11(A); Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 129 (2014) (“The omission of particular language from a statute is deemed deliberate where the legislature included such omitted language in related of similar statutes”). See also Commonwealth v. Dossantos, SJC-11790 (July 1, 2015) (slip. op. at 12) (legislature clearly knew how to reference concept, but “chose not to do so”). To the extent that G.L.c. 90 and G.L.c. 90F may be in conflict, there is no need to resort to the typical maxim of statutory construction that a specific statute, in this case G.L.c. 90F, controls over the provisions of a general statute, in this case G.L.c. 90, §24. See Monell v. Boston Pads, LLC, 471 Mass. at 577 and cases cited. Rather, the legislature itself, in Chapter 246 of the Acts of 1990, has already mandated exactly that result. The absence of a provision for license restoration for a refusal irrespective of trial results is consistent with federal law. 49 CFR §384.210 provides that a state must not knowingly issue a commercial driver’s license to a person disqualified under 49 CFR §383. 49 CFR §383.51, Table 1, like Massachusetts law, provides for a lifetime disqualification for individuals who have a chemical test refusal and a separate conviction for an OUI offense. In sum, the Board correctly concluded that the Registrar did not err in refusing to return Husseys license.[4]
Finally, there is no merit to the suggestion that, having concluded that an earlier decision to restore a commercial driver’s license under comparable circum *715 stances was based on an erroneous interpretation of law, the Board was required to persist in its error for perpetuity under pain of being found to act arbitrarily or capriciously. See MCI Worldcom Commc’ns, Inc. v. Department of Telecomms and Energy, 442 Mass. 103, 116 (2004), and cases cited (“reasoned consistency” does not require that an agency “may never deviate from its original position”).
Order
The plaintiffs motion for judgment on the pleadings is denied; the Board’s decision declining to order the Registrar to reinstate the plaintiffs commercial driver’s license is affirmed. Judgment shall enter for the defendants.

 Hussey had been charged with OUI, second offense, and found not guilty of the underlying OUI charge.

 Specifically, G.L.c. 90, §24(l)(f)(l) provides that:
No license or right to operate shall be restored under any circumstances and no restricted or hardship permits shall be issued during the suspension period imposed by this paragraph; provided, however, that the defendant may immediately, upon the entry of a not guilty finding or dismissal of all charges under this section, section 24G [Homicide by Motor Vehicle), section 24L [Causing Serious Bodily Injury While Driving Under the Influence of Liquor or Drugs], or section 131/2 of chapter 265 [Manslaughter — Driving Under the Influence], and in the absence of any other alcohol related charges pending against said defendant, apply for and be immediately granted a hearing before the court which took final action on the charges for the purpose of requesting the restoration of said license. At said hearing, there shall be a rebuttable presumption that said license be restored, unless the commonwealth shall establish, by a fair preponderance of the evidence, that restoration of said license would likely endanger the public safety. In all such instances, the court shall issue written findings of fact with its decision.

 In explaining its decision, the Board stated that it believed that if it ordered the Registrar to reinstate Hussey’s commercial driver’s license despite his being deemed disqualified under 49 CFR§383.5, federal funding might be withheld. While doubtless the desire to obtain proffered federal funding was a motivating factor in the legislature’s adoption of G.L.c. 90F, this court need not speculate on what might happen were Hussey’s license restored.