NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13286


JASON DACEY  vs.  SANDY BURGESS.



Essex.      December 5, 2022. – February 16, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.



Landlord and Tenant, Habitability, Control of premises,
    Attorney's fees. Practice, Civil, Stipulation, Judgment,
    Entry of judgment, Execution, Relief from judgment,
    Vacation of judgment, Stay of proceedings, Attorney's fees,
    Costs. Judgment, Enforcement, Implementing settlement
    agreement, Relief from judgment. Housing Court,
    Jurisdiction, Costs and fees. Jurisdiction, Housing Court.
    Statute, Construction. Contract, Settlement agreement,
    Incapacity.




    Civil action commenced in the Northeast Division of the
Housing Court Department on February 26, 2020.

    Motions for entry of judgment and for stay of execution
were heard by Gustavo A. del Puerto, J., and motions to vacate
the judgment and to alter or amend the judgment were also heard
by him.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Paul R. Collier, III (Michael A. Weinhold also present) for
the plaintiff.
    Patrick F. Bull for the defendant.

    Andrew Hoffman, for MLPB, amicus curiae, submitted a brief.
    Richard M.W. Bauer, Patricia Whiting, Louisa Gibbs, &
Benjamin Golden, for City Life/Vida Urbana & another, amici
curiae, submitted a brief.

CYPHER, J.    In March of 2020, following mediation, the plaintiff tenant, Jason Dacey, entered into a stipulation to dismiss voluntarily all claims against the defendant landlord, Sandy Burgess, and agreed to vacate his apartment.  In exchange for the release of claims and to assist with relocation, Burgess agreed to waive rent for the month of March.  Because of the COVID-19 emergency eviction moratorium, however, Burgess was unable to seek judgment on the parties' voluntary stipulation, and execution on such judgment, until October of 2020.  On motion of Burgess, a judge of the Housing Court entered judgment in her favor.[1]  Dacey then sought relief from the judgment, and filed a motion to revise, revoke, or vacate the judgment on jurisdictional and equitable grounds.  This motion was denied.

Dacey now appeals from both the judge's entry of judgment in favor of Burgess and the denial of his motion to revise, revoke, or vacate the judgment.  This appeal presents, among other issues, the question whether Burgess could seek to enforce the parties' voluntary stipulation following mediation, and attempt to recover possession of the leased premises absent the

_____

[1] The judge, however, granted Dacey's request to stay issuance of the judgment through April 30, 2021.

commencement of a summary process action pursuant to G. L. c. 239.  Where we conclude that the judge did have the authority to award possession of the premises to Burgess in the circumstances of this case, we affirm the entry of judgment in favor of Burgess and the denial of Dacey's motion to revise, revoke, or vacate such judgment.[2]

Background.  The plaintiff, Dacey, leased a two-bedroom apartment from the defendant, Burgess.  The original lease required Dacey to pay the sum of $1,250 per month.  In November 2019, however, Burgess informed Dacey of a rental increase of sixty-five dollars, increasing the total rent to $1,315 per month.  He refused to pay the rental increase, and as a result of his refusal, Burgess sent a formal notice to quit via certified mail, which remained unclaimed.  Burgess subsequently had a notice to quit hand-delivered to Dacey.

Following the notice to quit, Dacey filed a verified complaint on February 26, 2020, and a motion seeking a temporary restraining order for treatment of an alleged bedbug issue within the apartment, as well as monetary compensation for damages.  On March 12, 2020, the parties agreed to mediation, during which they reached a voluntary stipulation, which the

_____

[2] We acknowledge the amicus letter of MLPB, and the amicus brief of City Life/Vida Urbana and Lynn United for Change filed in support of Dacey.

judge also signed, dismissing all claims.  According to the terms of the stipulation, Dacey agreed to vacate the apartment by no later than August 31, 2020.  In exchange for his agreement to waive all remaining claims against Burgess, Dacey received one month free from rent for March 2020, to assist him with relocation.[3]

Following the voluntary stipulation, Dacey did not vacate the premises according to its terms, and remained in the apartment until the expiration of the COVID-19 emergency eviction moratorium in October 2020, at which time Burgess sought judgment and execution in an attempt to regain possession of the premises.  After judgment entered in favor of Burgess, as explained supra, Dacey unsuccessfully attempted to revise, revoke, or vacate the judgment on both jurisdictional and equitable grounds.

Discussion.  1.  Housing Court's authority.  Dacey argues that, where Burgess failed to bring a summary process action pursuant to G. L. c. 239, the Housing Court lacked the authority to enforce the voluntary stipulation and award possession of the premises to Burgess.  We disagree.

---

[3] Under the terms of the stipulation, Dacey was required to begin paying monthly use and occupancy to Burgess beginning in April 2020, until he vacated the premises.

Before reaching the merits of Dacey's argument, we note that he argues that the Housing Court does not have "subject matter jurisdiction" to order him to forfeit possession of the premises without a summary process action brought pursuant to G. L. c. 239. "[A]s a jurisdictional matter, the Housing Court has broad authority to resolve civil claims and counterclaims that relate 'directly or indirectly' to 'the health, safety, or welfare, of any occupant of any place used . . . as a place of human habitation,' as well as the authority to resolve all 'housing problems, including all contract and tort actions which affect the health, safety and welfare of the occupants or owners' of such housing." Federal Nat'l Mtge. Ass'n v. Rego, 474 Mass. 329, 338 (2016), quoting G. L. c. 185C, § 3. The entire dispute between Dacey and Burgess arose from a civil claim concerning an alleged bedbug issue within the apartment; thus, it was a claim that directly related to the health, safety, and welfare of Dacey as an occupant of the apartment leased to him by Burgess. Therefore, the Housing Court undoubtedly possessed the "subject matter jurisdiction" to enter a judgment in Burgess's favor in this case. Dacey's argument on appeal then more properly may be characterized as an argument that Burgess could not enforce the parties' agreement because she did not instate an action pursuant to G. L. c. 239 when

attempting to recover possession of the apartment.  See G. L. c. 184, § 18.

Our analysis begins with examining the actual words of G. L. c. 184, § 18.  See GGNSC Admin. Servs., LLC v. Schrader, 484 Mass. 181, 187 (2020), quoting Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 604 (2019) ("When conducting statutory interpretation, this court strives to effectuate the Legislature's intent by looking first to the statute's plain language").  "A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." Marengi v. 6 Forest Rd. LLC, 491 Mass. 19, 24-25 (2022), quoting Sullivan v. Brookline, 435 Mass. 353, 360 (2001).

Section 18 states:  "No person shall attempt to recover possession of land or tenements in any manner other than through an action brought pursuant to [G. L. c. 239] or such other proceedings authorized by law" (emphasis added).  G. L. c. 184, § 18.  Contrary to Dacey's argument, the plain language of the statute clearly demonstrates that a summary process action under G. L. c. 239, while likely the most common avenue for a landlord to recover possession of a leased premises, is not the exclusive avenue for Burgess to recover possession of the apartment.  See id.  See also Serra v. Quantum Servicing, Corp., 747 F.3d 37, 43

(1st Cir. 2014), citing G. L. c. 184, § 18 ("it is clear that 'summary process' is not the exclusive means by which a foreclosing entity [may] seek possession of real property in Massachusetts").  The explicit language of the statute allows recovery of possession of a leased premises by any "other proceeding[] authorized by law," G. L. c. 184, § 18, demonstrating that the Legislature understood that there may be some limited circumstances in which a landlord's recovery of possession of a leased property may arise outside the context of summary process pursuant to G. L. c. 239.

With that in mind, we turn to the particular factual circumstances of this case.  Here, following the filing of the complaint, Dacey filed a motion for a temporary restraining order.  A hearing was scheduled in the Housing Court, and the parties were referred to a housing specialist for alternative dispute resolution prior to trial.  At this point, the parties were "faced with a decision:  proceed [on the current course toward] trial, or attempt to reach a mutually satisfactory agreement through negotiation or mediation."  Adjartey v. Central Div. of the Hous. Court Dep't, 481 Mass. 830, 856 (2019) (Appendix).

"Mediation is an informal, confidential process during which the parties meet with a housing specialist to discuss a potential settlement."  Adjartey, 481 Mass. at 856 (Appendix).

"Housing specialists are Housing Court employees who work as impartial mediators in cases commenced in the court."  Id. at 856 n.17.  Where the parties reach a settlement by their own accord or by way of the mediator's help, and it is approved by a judge of the Housing Court, the settlement becomes a binding court order.  Id. at 856.  See Boston Hous. Auth. v. Cassio, 428 Mass. 112, 113-114 (1998).  A judge then lawfully may enter the approved settlement agreement as a judgment, also known as a consent judgment.  See Thibbitts v. Crowley, 405 Mass. 222, 226 (1989).

While the fair administration of justice does not require settlement, parties freely may choose to settle.  See Wong v. Luu, 472 Mass. 208, 220 (2015).  In settling, the parties make a "free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment."  Kelton Corp. v. County of Worcester, 426 Mass. 355, 360 (1997), quoting Thibbitts, 405 Mass. at 227.  Once judgment is entered based on the parties' voluntary settlement, the judgment "conclusively determines the rights of the parties as to all matters within its scope."  Kelton Corp., supra at 359, citing Fishman v. Alberts, 321 Mass. 280, 281 (1947).

Here, through the aid of mediation, Dacey voluntarily entered into the stipulation with Burgess.  He agreed to vacate the apartment by no later than August 31, 2020, in exchange for

one month free from rent during March of 2020.  This stipulation then was approved by a judge of the Housing Court, and judgment ultimately was entered in accordance with the stipulation's terms once the COVID-19 emergency eviction moratorium had expired in October of 2020.

While summary process actions likely are the more common avenue in which a landlord may recover possession of leased premises, as evidenced by the express language of G. L. c. 184, § 18, both Dacey and Burgess instead used court-referred mediation in the Housing Court, which this court previously has recognized and approved of, see Adjartey, 481 Mass. at 856 (Appendix), to enter voluntarily into a valid, binding contract to settle all of their outstanding claims, in lieu of a trial. See Kelton Corp., 426 Mass. at 359-360.  In the circumstances of this case, any summary process action following the voluntary stipulation would have been superfluous, as Dacey voluntarily surrendered possession of the premises to which Burgess lawfully was entitled as of August 31, 2020.  See Nautican Realty Co. v. Nantucket Shipyard, Inc., 28 Mass. App. Ct. 902, 904 (1989) (where lessor was entitled to recover possession of property in equity proceeding, "summary process proceeding may be treated as superfluous").  Furthermore, were we to permit the parties subsequently to challenge their settlement agreement, which already has been approved by a judge, we would eviscerate the

efficacy of the mediation process, as any agreement from such process would be worthless. See Cassio, 428 Mass. at 113 (allowing party to renege on agreement, to which parties voluntarily agreed and which judge had approved, would render agreement "nugatory").

Ultimately, "[w]e . . . endeavor to interpret a statute to give effect 'to all its provisions, so that no part will be inoperative or superfluous.'" Connors v. Annino, 460 Mass. 790, 796 (2011), quoting Wheatley v. Massachusetts Insurers Insolvency Fund, 456 Mass. 594, 601 (2010). The statutory phrase "other proceedings authorized by law" found in § 18 must be afforded substance to effectuate the Legislature's intent behind its inclusion. See Worcester v. College Hill Props., LLC, 465 Mass. 134, 139 (2013), citing Selectmen of Topsfield v. State Racing Comm'n, 324 Mass. 309, 312-313 (1949) ("All the words of a statute are to be given their ordinary and usual meaning, and each clause or phrase is to be construed with reference to every other clause or phrase without giving undue emphasis to any one group of words, so that, if reasonably possible, all parts shall be construed as consistent with each other so as to form a harmonious enactment effectual to accomplish its manifest purpose"). Dacey's reading of the statute fails to do just that, as his interpretation ignores the provision "other proceedings authorized by law." See Monell v.

Boston Pads, LLC, 471 Mass. 566, 576 (2015) (additional express statutory language may not be overshadowed and deemed superfluous by other express language found within same statutory provision).  Therefore, we hold that Burgess could seek to enforce the parties' voluntary stipulation following mediation, and the judge had the authority to award possession of the leased premises to Burgess, as the entry of judgment based on a voluntary stipulation in these circumstances constituted an "other proceeding[] authorized by law" within the context of § 18.

2.  Dacey's disability claim.  Dacey argues that where the Housing Court failed to provide him with a reasonable accommodation for his disability, the judge abused his discretion in denying Dacey's motion to revise, revoke, or vacate the judgment.[4]  Dacey filed the motion to revise, revoke, or vacate the judgment pursuant to Mass. R. Civ. P. 59, 365 Mass. 827 (1974), as well as Mass. R. Civ. P. 60, 365 Mass. 828 (1974).  We review the denial of a motion filed under each of

---

[4] Dacey also argues that where equity does not favor forfeiture, and where the COVID-19 pandemic negatively affected tenants across the Commonwealth, including Dacey, the balance of harms is "vastly disproportionate," such that equity precludes enforcement of the stipulated judgment.  See Howard D. Johnson Co. v. Madigan, 361 Mass. 454, 456 (1972) ("In our decisions we have followed the rule that equity does not favor a forfeiture").  Burgess argues that this issue is waived because Dacey raised it for the first time on appeal.  See Boss v. Leverett, 484 Mass. 553, 562 (2020).

these rules for an abuse of discretion.  See Matter of M.C., 481 Mass. 336, 344 (2019) (review of denial of motion under Mass. R. Civ. P. 60 is for abuse of discretion); Clifton v. Massachusetts Bay Transp. Auth., 445 Mass. 611, 623 (2005) (review of denial of motion under Mass. R. Civ. P. 59 is for abuse of discretion). "[A] judge's discretionary decision constitutes an abuse of discretion where [the appellate court] conclude[s] the judge made a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation omitted).  Miller v. Miller, 478 Mass. 642, 653 (2018), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Here, Dacey argues that where he was not given a reasonable accommodation for his alleged mental disability, the Housing Court judge erred in entering judgment based on the parties' voluntary stipulation.  We disagree.

In Adjartey, 481 Mass. at 848-849, we held that "where a party in a summary process eviction action alerts the court and the adverse party to a disability requiring accommodation, the court, if it determines that the party indeed has a disability, shall provide the disabled party with reasonable accommodation." "What accommodation is reasonable must be determined on an individualized basis depending on the particular circumstances

presented." Id. at 849, citing Garcia v. Department of Hous. & Community Dev., 480 Mass. 736, 749 (2018).

Following the entry of judgment based on the parties' voluntary stipulation, Dacey claimed that he was affected by a "disabling mental illness," and that the Housing Court judge's failure to provide a reasonable accommodation during mediation rendered the voluntary stipulation void, such that this court ought to vacate the judgment against him. On this record, Dacey has provided no evidence that he ever "alert[ed] the court and the adverse party" of any alleged mental disability prior to, or during, the mediation process.[5] Adjartey, 481 Mass. at 848. His submission on this issue, in his motion to revise, revoke, or vacate the judgment, was quite limited. Although Dacey averred that he suffered from depression and bipolar disorder, the record does not support such a claim with any medical evidence, or any evidence suggesting a disability that would have interfered with his ability to negotiate a voluntary settlement with the assistance of a court mediator. The record only

---

[5] When determining whether a party requires a reasonable accommodation, a judge must "accompany [his or her] decision[] with 'findings adequate to permit [appellate] review.'" Adjartey, 481 Mass. at 849, quoting McDonough, petitioner, 457 Mass. 512, 526 (2010). While the judge did not make explicit findings as to Dacey's disability, this requirement nonetheless was satisfied where such findings were implicit in the judge's memorandum and order of decision on Dacey's motion to revise, revoke, or vacate the judgment.

reflects that Dacey suffered from a disability that was physical in nature, one which arose from back and neck issues. This physical disability did not "interfere[] with his . . . ability to appear in court," though, id. at 849, as Dacey physically was present during mediation.

"A settlement agreement is a contract and its enforceability is determined by applying general contract law." Sparrow v. Demonico, 461 Mass. 322, 327 (2012), citing Warner Ins. Co. v. Commissioner of Ins., 406 Mass. 354, 360 n.7 (1990). Such an agreement "is voidable by a person who, due to mental illness or defect, lacked the capacity to contract at the time of entering into the agreement." Sparrow, supra, citing Bucklin v. National Shawmut Bank, 355 Mass. 338, 341 (1969). However, "[t]he burden is on the party seeking to void the contract to establish that the person was incapacitated at the time of the transaction." Sparrow, supra, citing Meserve v. Jordan Marsh Co., 340 Mass. 660, 662 (1960). On this record, while we can appreciate Dacey's averment in his affidavit that he suffers from depression and bipolar disorder, Dacey has failed to meet his burden to demonstrate that he lacked the capacity to enter into the voluntary stipulation, so as to render the stipulation void. There is no medical evidence -- indeed, no evidence at all -- to support a claim that Dacey lacked the capacity to enter into the stipulation during mediation with the housing

specialist. See Sparrow, supra at 332 ("medical evidence is necessary to establish that a person lacked the capacity to contract due to the existence of a mental condition"). Where Dacey's limited showing of a mental disability failed to properly alert the Housing Court judge of his alleged need for a reasonable accommodation, in accordance with this court's decision in Adjartey, and where Dacey has not met his burden to void the voluntary stipulation for lack of capacity to contract, we conclude that the judge did not abuse his discretion in denying Dacey's motion to revise, revoke, or vacate the judgment.

3. Request for attorney's fees and costs. Finally, Burgess, characterizing this appeal as frivolous, requests that this court award appellate attorney's fees and costs, pursuant to Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019). We decline to do so.

Pursuant to Mass. R. A. P. 25, an appellate court may "award just damages and single or double costs to the appellee" in civil cases where the appeal is "frivolous." "An appeal is frivolous, so as to risk [the] potential imposition of a sanction, where there can be no reasonable expectation of a reversal under well-settled law." Abuzahra v. Cambridge, 486 Mass. 818, 829 (2021), quoting Marabello v. Boston Bark Corp., 463 Mass. 394, 400 (2012). "[D]etermining 'whether an appeal is

frivolous is left to the sound discretion of the appellate court.'"  Oxford Global Resources, LLC v. Hernandez, 480 Mass. 462, 478 (2018), quoting Marabello, supra.

Here, although we affirm the judgment awarding possession of the leased premises to Burgess absent a summary process action under G. L. c. 239, in accordance with the explicit language of G. L. c. 184, § 18, Dacey's appeal was not frivolous, because it involved a question of law that this court previously had not addressed directly.  See Abuzahra, 486 Mass. at 829 (no frivolous appeal where city's appeal "involved a novel question of law that this court previously did not have occasion to address").  No appellate case in the Commonwealth had yet determined whether a voluntary stipulation with dismissal satisfies the requirement of any "other proceeding[] authorized by law" under § 18.  Where the law is not "well settled" (citation omitted), Avery v. Steele, 414 Mass. 450, 455 (1993), mere "[u]npersuasive arguments do not necessarily render an appeal frivolous," Oxford Global Resources, LLC, 480 Mass. at 478, quoting Marabello, 463 Mass. at 400.  Furthermore, where the COVID-19 pandemic and Dacey's allegations of a mental disability became complicating circumstances in the parties' voluntary stipulation with dismissal, we cannot say that Dacey possessed "no reasonable expectation of a reversal," and as such, we decline to levy on him the sanction of appellate

attorney's fees and costs.  <u>Abuzahra</u>, <u>supra</u>, quoting <u>Marabello</u>, <u>supra</u>.  Therefore, we hold that this appeal was not frivolous and conclude that Burgess is not entitled to appellate attorney's fees and costs pursuant to Mass. R. A. P. 25.

Accordingly, for the foregoing reasons, we affirm the judgment in favor of Burgess, and we also affirm the order denying Dacey's motion to revise, revoke, or vacate the judgment.

<u>So ordered</u>.